CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 29 2017

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTHONY MEYERS, | ) | CASE NO. 7:16CV00360 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| DR. MILES, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

Anthony Meyers, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against Dr. Miles, a physician who treated him at a local jail. The matter is currently before the court on Dr. Miles' motion for summary judgment and Meyers' responses thereto. Finding that Meyers' amended complaint and other submissions present no genuine issues of material fact in dispute showing a viable claim under § 1983, the court will grant summary judgment for Dr. Miles.

## Background

Meyers was first incarcerated at the regional jail facility in Duffield, Virginia, on March 7, 2016, three months before Dr. Miles began working there. The course of treatment thereafter provided to Meyers at the jail, as reflected in Dr. Miles' affidavit ("Aff.," ECF No. 35-1) and attached medical records ("Med.," ECF No. 35-2), is undisputed.

Meyers requested and was granted a medical examination on April 28, 2016, when he reported difficulty with urination and ejaculation and requested a prostate examination. A nurse practitioner, Krystal Large, performed a rectal exam on Meyers and noted a mild enlargement of his prostate. She ordered lab work, diagnosed him with prostatitis and urinary retention, and prescribed an antibiotic for ten days. She noted Meyers' statement that he was contacting a

lawyer because "no one is interested in meeting up to their requirements as medical staff." (Med. at 13.)

Meyers next visited the jail's medical unit on May 16, 2016, when he complained of urinary hesitancy. Dr. Moreno conducted a physical exam that revealed no abnormalities, although at Meyers' request, the doctor deferred conducting a genital examination. Dr. Moreno diagnosed Meyers with chronic prostatitis and prescribed a refill of the antibiotic Bactrim for 30 days. He also prescribed Flomax to improve urination symptoms.

Dr. Moreno saw Meyers again on June 6, 2016, when he noted slight improvement in urinary symptoms, but an increase in constipation and diarrhea. Again, a physical exam revealed no abnormalities, but Meyers deferred undergoing a genital exam. Dr. Moreno refilled the prior prescriptions for 30 more days. According to Meyers, Dr. Moreno diagnosed him with a prostate infection and said "treatment could take from 6 months to a year." (Am. Compl. 2, ECF No. 20.)

In early July, after the Bactrim prescription ran out, Meyers wrote a medical grievance, stating "I AM SUPPOSED TO TAKE BACTRUM FOR AT LEAST 4 MONTHS. THE FLOWMAX H[E]LPS WITH URINATION UNTIL MY PROSTATE IS BACK TO NORMAL. IT[ ] HAS BEEN INFECTED AND MESS[E]D UP FOR A LONG TIME SO [T]REATMENT MAY TAKE LONGER. . . . A Prostate inf[e]ction is ag[gra]vating and sometimes painful." (Resp., at 2, ECF No. 48.)

Dr. Miles' initial contact with Meyers occurred on July 11, 2016. The doctor noted that Meyers was argumentative and insisted that he had a prostate infection and was planning to file a lawsuit. The doctor's notes also report Meyers' statements that he felt he was paralyzed below the waist, he could not urinate correctly, he did not want a prostate exam,[1] and he needed another

---

[1] Meyers denies that he refused to undergo a prostate examination on July 11, 2016, see Counter Aff. 2, ECF No. 42, and complains in various submissions that Dr. Miles never performed a prostate examination on him.

dose of antibiotics. Test results showed that Meyers' urine was negative for infection and that his PSA was normal. Dr. Miles explained to Meyers that additional antibiotics were not indicated by these results and could actually be harmful.[2] Instead, the doctor refilled the prescription for Flomax and ordered a urine culture.[3]

Dr. Miles saw Meyers again on July 18, when the Meyers' complaints were reported as follows:

> [D]r. Mil[e]s I canno[t] handl[e] thi[s] seriously, the symptoms are r[e] turning the m[e]dication was helping if you do no[t] know how to diagnose me I need to see specialist, b[a]sically feels like I got a bal[l]oon in my butt, like m[y] but[t] is tu[r]ning inside out burns can[']t urinate hurts in crease inside thighs lower back feels bruised inside[.] Itch between testicles and rectum, infected prostates only ge[t] worse and can take months to cure.

(Med. at 10.) The doctor examined Meyers and found no abnormalities. His urine culture was again negative for infection. The doctor reassured Meyers that he did not have a prostate infection at that time.

Dr. Miles next saw Meyers on August 17, 2016. He noted that Meyers was complaining of clear fluid from his rectum and an itch between his rectum and testicles, as well as large ejaculations. Meyers insisted that he had "some kind of medical issue, possibly cancer" and demanded a diagnosis. (Aff. at ¶ 9.) Based on his symptoms, Dr. Miles diagnosed Meyers with possible colitis and/or irritable bowel syndrome ("IBS") and prescribed Bentyl to treat the IBS. The doctor also ordered a follow up exam in two weeks.

---

[2] According to Meyers, Dr. Miles said, "Jail will not pay for treatment, you cannot take antibiotics for that long, you cannot see a ne[u]rologists." (Am. Compl. 3.)

[3] Meyers filed a medical grievance after his appointment on July 11, complaining that the antibiotics Dr. Moreno prescribed should have been continued for four to six months. A nurse responded: "You seen the doctor today [July 11, 2016]. He is ordering a urine culture which you gave a sample for this AM it will show if you have bacteria in your urine. . . . The Bactrim has been discontinued because you completed it [and] the doctor does not wish to reorder antibiotics unless your urine culture comes back positive." (Resp., at 3, ECF No. 48.)

3

At the follow up appointment on September 8, Dr. Miles noted Meyers' report that the clear fluid in his stools had decreased. The doctor increased the prescription for Bentyl and also continued the Flomax.

Dr. Miles examined Meyers again on October 10, 2016, after Meyers complained of swelling in his prostate and difficulty with urination. His physical exam was normal, however. Dr. Miles prescribed a course of the antibiotic Bactrim in an attempt to alleviate some or all of Meyers' symptoms and continued the Flomax.

Meyers came to see Dr. Miles again on October 25. Meyers then insisted that the three-week course of antibiotics the doctor had ordered was "pointless" because "prostate infections take months to treat." (Id. at ¶ 12.) Dr. Miles ordered lab work and a follow up exam in two weeks. Two days later, on October 27, Meyers was placed on suicide watch until November 2, 2016.

A nurse practitioner examined Meyers on November 16, 2016. She noted his reports of ongoing problems with urination and his complaints of pain in his testicles and clear fluid from the rectum. A rectal exam revealed an enlarged prostate, and the diagnosis was prostatitis. Meyers received a prescription for two antibiotics—one to take for three months and one to take for four weeks.

Meyers filed his amended complaint against Dr. Miles in early November 2016.[4] Liberally construing his allegations and submissions, he claims that Dr. Meyers violated his constitutional rights by: (1) discontinuing the antibiotic; (2) failing to send Meyers to a

---

[4] Meyers' initial submission alleged as follows: "On July 11 Dr. [Miles] stated to me 'The Jail is not going to pay for your treatment.' I was taking medication and he discontinued my medication. Physical harm, Failure to provide medical treatment." (Compl. 4, ECF No. 1.) The court notified Meyers that these allegations did not state sufficient facts for an actionable claim under § 1983 against the doctor and granted him an opportunity to file an amended complaint, which he did. Since then, Meyers has also continued to submit letters and exhibits that the court has considered in support of the claims raised in the amended complaint.

4

"ne[u]rologist" or other specialist; and (3) refusing to diagnose or treat Meyers' "problem." (Am. Compl. 3-4, ECF No. 20.) Meyers admits that Dr. Miles has continued the Flomax that has helped with his urination difficulties. He complains that the doctor "did not diagnose or check [his] prostate" and repeatedly mentioned that Meyers was only 28 years old. (See ECF No. 31.) He presents medical records reflecting that Dr. Miles examined him in Jan 2017 for the same problems and still did not perform a prostate exam. Meyers contends that because of Dr. Miles' treatment decisions, his "problem" worsened and he lost 35 pounds. (Am. Compl. 3.) He seeks monetary damages and injunctive relief ordering that he be diagnosed and treated.

## Discussion

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Finally, in reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment. To prevail on a claim of constitutionally inadequate medical care, plaintiff must

5

establish acts or omissions harmful enough to constitute deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

First, the prisoner must show that the deprivation suffered or the injury inflicted was, "objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). For purposes of this opinion, the court will presume that Meyers' symptoms presented a serious medical need at the time of his interactions with Dr. Miles between July and November 2016, the period at issue in this lawsuit.

To prevail on his § 1983 claim against Dr. Miles, however, Meyers must also show that the doctor acted with deliberate indifference to his serious medical need. Specifically, he must state facts indicating that Dr. Miles knew of and disregarded an excessive risk to his health or safety. See Farmer, 511 U.S. at 837. The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The defendant is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or if he responded reasonably to that risk. Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds by Farmer).

After careful review of the parties' submissions, particularly the undisputed medical records provided, the court concludes that Meyers cannot prove deliberate indifference here. The evidence establishes that at no time did Dr. Miles ignore Meyers' condition or refuse to examine, diagnose, or treat him. When Meyers complained to Dr. Miles about his symptoms, the doctor was responsive to those complaints, in light of his examination of Meyers and objective testing. At their first meeting in July 2016, Dr. Miles did not believe Meyers had a prostate infection and made a medical judgment to order the urine culture and evaluate its results and later developments, rather than reordering antibiotics that had not previously resolved Meyers' issues. At the August exam, the doctor believed Meyers' recent history, symptoms, and test results might indicate colitis or IBS and diagnosed and treated him treatment accordingly. At a follow up exam in early September, Dr. Miles adjusted Meyers' medication, based on the reports of his symptoms at that time. When Meyers complained about a swollen prostate in October, the doctor then prescribed antibiotics.

Meyers also complains that Dr. Miles should have referred Meyers to a specialist. Because the physical exams Dr. Miles performed on Meyers were normal and Meyers' urine cultures and PSA tests were also normal, however, Dr. Miles made a "medical judgment that a referral to a specialist was not merited." (Aff. ¶ 15.)

Meyers clearly disagrees with Dr. Miles' treatment decisions. He believes he should have received antibiotics for several months as Dr. Moreno allegedly predicted would be necessary or received evaluation of his symptoms by a specialist. The "deliberate indifference standard is not satisfied by . . . mere disagreement [between patient and doctor] concerning '[q]uestions of medical judgment.'" <u>Germain v. Shearin</u>, 531 F. App'x 392, 395 (4th Cir. 2013)

7

(unpublished) (quoting Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975)); Wright v. Collins, 766 F.2d 841, 849 (4th Cir.1985) (same).

At the most, such disagreements reflect Meyers' accusation that Dr. Miles misdiagnosed his condition from July through September and mistakenly delayed providing him with antibiotics or a specialist's evaluation of his condition. "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference as required to prove a constitutional deprivation. Estelle, 429 U.S. at 105. Thus, under § 1983, a doctor may not be held liable for allegedly negligent diagnosis or treatment. Id. at 107 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); see also Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (granting summary judgment where doctor provided diagnosis and treatment, but did not diagnose or treat pituitary gland tumor that ultimately blinded the prisoner plaintiff). Finding no genuine issue of material fact in dispute showing that Dr. Miles knew Meyers had a serious medical need for different treatment that he was provided or that he consciously ignored such a need, the court concludes that Dr. Miles is entitled to summary judgment as a matter of law. An appropriate order will be entered this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendant.

ENTER: This 29th day of June, 2017.

_____
Chief United States District Judge